IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHAEL COOPER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | Civil No. **008-742-MJR** |
| ) | |
| **JOHN EVANS, BARB COOKSEY,** ) | |
| **JON KLINE, ANGELA WINDSOR,** ) | |
| **GARY ADAM, CHARLES CONRAD,** ) | |
| **DEANA FORTAG, MS CAMPBELL,** ) | |
| **G. HOPSON, M. PROCTOR,** ) | |
| **C/O ORESKOVICH, and C/O HOWELL,** ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

Defendants John D. Evans and Barbara Cooksey[1] are before the Court seeking summary judgment. **(Doc. 32.)** The defendants argue that plaintiff Michael Cooper has failed to exhaust administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a). The defendants have filed a memorandum in support of their position **(Doc. 33)**; plaintiff has filed a memorandum in opposition **(Doc. 41)**, to which defendants filed a reply **(Doc. 44)**; and an evidentiary hearing was conducted. This Report and Recommendation is respectfully submitted to U.S. District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B).

## The Claims

---

[1]Only defendants Evans and Cooksey have moved for summary judgment. Defendants Kline, Windsor, Adam, Conrad, Fortag, Campbell, Hopson, Proctor, Oreskovich and Howell did not join in the motion. Defendants Conrad, Fortag, Hopson, Howell, Kline, Oreskovich, Proctor and Winsor joined in a reply to plaintiff's response to the motion for summary judgment **(Doc. 44)**, but that is not tantamount to filing a motion for summary judgment.

In accordance with 28 U.S.C. § 1915A, the District Court construed the original complaint as asserting: (1) First Amendment claims against defendants Evans and Cooksey for depriving plaintiff of the lacto-ovo diet required by plaintiff's religion; and (2) a First Amendment retaliation claim against defendant Cooksey for "scarring" plaintiff's meals.  **(Doc. 7.)**  Since that time, the Amended Complaint added multiple additional defendants and expanded the scope of the aforementioned claims.  **(Doc. 29.)**

Relative to defendants Evans and Cooksey, plaintiff's Amended Complaint alleges that while he was incarcerated at Big Muddy River Correctional Center, warden Evans and Barbara Cooksey, head of the dietary department at Big Muddy, intentionally denied plaintiff the lacto-ovo diet required by his Buddhist religious beliefs, in violation of the "free exercise" clause of the First Amendment, the "equal protection" clause of the Fourteenth Amendment– and by extension, the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc-1).[2]  **(Doc. 29, pp. 4, 6-7.)**  According to plaintiff, the religious diets of Jews, Muslims and other religions were accommodated, while he was served items counter to his religious beliefs, and was thereby forced to endure nutritionally inadequate meals in order to comply with his religious beliefs.  Plaintiff also alleges that Cooksey retaliated against plaintiff for filing grievances about his religious diet by directing others to "scar" his meals.  **(Doc. 29, p. 7 and Doc. 29-1, p. 1.)**[3]

---

[2] In accordance with *Ortiz v. Downey*, 561 F.3d 664, 670 (7th Cir. 2009), and in recognition of plaintiff's pro se status, although plaintiff has not specifically cited the Religious Land Use and Institutionalized Persons Act, this Court construes the Amended Complaint as containing such a claim.

[3] Plaintiff characterizes the alleged retaliation as "cruel and unusual punishment" (a violation of the Eighth Amendment).  In recognition of plaintiff's pro se status, this Court construes the claim as being brought under the First Amendment, which is the more appropriate constitutional provision– and a more lenient legal standard.

Plaintiff lodges other similar claims against other defendants, which will not be enumerated at this juncture.

This Court notes that it appears that warden Evans is named as a defendant due to his status as the warden; there are no allegations of his personal, direct involvement. Supervisory officials may be liable for the constitutional torts of their subordinates only *if* the supervisor knows of and facilitates, approves, condones, or turns a blind eye to the conduct. ***Chavez v. Cady,* 207 F.3d 901, 906 (7th Cir. 2000); *Jones v. City of Chicago,* 856 F.2d 985, 992-993 (7th Cir. 1988).** Plaintiff has attached documentation suggesting Evans's possible knowledge or involvement, which should suffice to permit the claim to proceed. **(*See* Doc. 29-1, p. 18.)**

### The Arguments Presented

The defendants argue that plaintiff failed to exhaust administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a). **(Docs. 32 and 33.)** The defendants acknowledge that plaintiff submitted a grievance on September 3, 2008, to the Administrative Review Board regarding his not receiving a "Buddhist" or lacto-ovo diet, but they note that the grievance was returned to plaintiff on October 7, 2008, because plaintiff had not submitted the grievance officer's and chief administrative officer's responses, as required by prison procedures. **(Doc. 33-1, pp. 4-6.)** According to the defendants, plaintiff never resubmitted that grievance, or any other similar grievance that had proceeded through the institutional process. The defendants support their position with the affidavit of Jackie D. Miller, Chairperson of the Illinois Department of Corrections Administrative Review Board ("ARB"). **(Doc. 39-1, pp. 1-3.)** In addition, at the evidentiary hearing Terri Anderson, Manager of Inmate Affairs, and Angela Windsor, Clinical Services Supervisor, testified.

Plaintiff counters by submitting documentation and asserting that he attempted to pursue a grievance on several occasions, but the grievance process was "unavailable." **(Doc. 41.)** More specifically, plaintiff contends grievances initiated in July and August 2008 were never responded to by administrative officials; he further contends that he was unable to comply with instructions from the Administrative Review Board regarding which form needed to be used to properly exhaust administrative remedies, because the form was unavailable.

## The Exhaustion Requirement

Plaintiff's claims are subject to the exhaustion requirement set forth in 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Perez v. Wisconsin Department of Corrections*, 182 F.3d 532 (7th Cir.1999), clarified that exhaustion of administrative remedies under Section 1997e(a)– while not jurisdictional *per se*– is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy. The exhaustion requirement applies to all claims "about prison life." ***Porter v. Nussle,* 534 U.S. 516, 532 (2002).**

Significantly, exhaustion of administrative remedies is required *before* a case may be brought, even if exhaustion is accomplished during pendency of the case. *See* **42 U.S.C. § 1997e(a);** *Perez,* **182 F.3d at 535-536.** In other words, an inmate cannot file suit and then exhaust his administrative remedies while suit is pending. ***Ford v. Johnson,* 362 F.3d 395, 398**

**(7th Cir. 2004).**

The Supreme Court has held that exhaustion means "proper exhaustion," that is, the inmate must file a timely grievance using the procedures put in place by the prison system, properly taking each step in the process.  ***Woodford v. Ngo,* 548 U.S. 81 (2006);** ***Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002).**  The law of the Seventh Circuit emphasizes that the purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims administratively/internally, prior to federal litigation.  ***See, e.g., Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006);** ***Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006);** *see also* ***Porter v. Nussle,* 534 U.S. 516, 524-525(2002).**

Illinois Department of Corrections regulations regarding the procedures inmates must follow are set forth in the Illinois Administrative Code (20 Ill.Admin.Code § 504.810 *et seq*. (effective May 1, 2003, through all times relevant to this case); *see also* Doc. 39-1, p. 1).  Those procedures first require an inmate to attempt to resolve grievances through his counselor.  **20 Ill. Admin. Code § 504.810(a).**  If that step is unsuccessful, the inmate may file a written grievance on a specified form within 60 days of discovery of the incident or problem giving rise to the grievance unless good cause can be shown for extending that period.  *Id.*  The grievance form must be addressed to the grievance officer and "deposited in the living unit mailbox or other designated repository." **20 Ill. Admin. Code § 504.810(b).**  The grievance should "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.*

The grievance officer provides the initial review of grievances.  **20 Ill. Admin. Code §**

**504.830(a).** If the grievance is found to have no merit, the regulations (20 Ill. Admin. Code § 504.830(d)) direct the grievance officer to consider the grievance and report findings and recommendations to the highest ranking official of a correctional facility, i.e. the warden. **20 Ill. Admin. Code § 504.802.** The warden then advises the inmate of his or her decision within two months where reasonably feasible. **20 Ill. Admin. Code § 504.830(d).**

If the inmate is not satisfied with the warden's decision, he may appeal in writing to the director of the Illinois Department of Corrections within 30 days. **20 Ill. Admin. Code § 504.850(a).** After reviewing the grievance and the responses by the grievance officer and the warden, the director decides whether the grievance: (a) requires a hearing before the Administrative Review Board ("ARB"); (b) is without merit; or (c) can be resolved without a hearing. **20 Ill. Admin. Code § 504.850(b).** If the grievance proceeds to a hearing, the ARB submits a written report to the director who reviews the findings and recommendations of the ARB and makes a final determination within six months. **20 Ill. Admin. Code § 504.850(b)-(f).**

Failure to exhaust administrative remedies is an affirmative defense; the defendant correctional officials have the burden of proving that the inmate had available remedies that he did not utilize. *See, e.g., Dole v. Chandler,* **438 F.3d 804, 809 (7th Cir. 2006);** *Dale v. Lappin,* **376 F.3d 652, 655 (7th Cir. 2004).** A remedy is "available" if the administrative procedure can lead to some relief, even if it is not the precise relief the inmate wants. *See Booth v. Churner,* **532 U.S. 731, 741 and f n. 6 (2001);** *Larkin v. Galloway,* **266 F.3d 718, 723 (7th Cir. 2001).** "Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use *affirmative misconduct* to prevent a prisoner from exhausting." ***Dole v. Chandler,***

**438 F.3d 804, 809 (7th Cir. 2006) (emphasis added) (citing** *Lewis v. Washington,* **300 F.3d 829, 833 (7th Cir. 2002); and** *Dale v. Lappin,* **376 F.3d 652, 656 (7th Cir. 2004).**

In *Pavey v. Conley,* 544 F.3d 739 (7th Cir. 2008), the Seventh Circuit delineated a three-step process for cases in which exhaustion is contested.

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.**

Summary judgment is appropriate if the evidence shows that "there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c);** *see Greeno v. Daley,* **414 F.3d 645, 652 (7th Cir. 2005).** Because the prison employees bear the burden on exhaustion, they must do more than point to a lack of evidence in the record; rather, they must "establish affirmatively" that the evidence is so one-sided that no reasonable fact-finder could find that plaintiff exhausted or was prevented from exhausting his administrative remedies. *Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.,* **971 F.2d 37, 42 (7th Cir. 1992);** *see Branham v. Snow,* **392 F.3d 896, 906-907 (7th Cir. 2004).** A

litigant's affidavit, based on personal knowledge, is sufficient to create a factual dispute. *See Holmes v. Village of Hoffman Estates,* **511 F.3d 673, 680 (7th Cir. 2007).** However, the submission of additional evidence may, of course, be determinative in a situation that would otherwise be a "swearing contest" of affidavits.

## Proposed Findings of Fact, Analysis and Proposed Conclusions of Law

According to plaintiff, he first submitted grievances to a grievance officer in July and August 2008, but he never received a response. **(Doc. 41, pp. 4, 6 and 7.)** There is no documentation of these grievances, and plaintiff did not testify in any detail about them. According to his brief, and as generally stated in his testimony, plaintiff submitted the grievances to a "grievance officer," but he never received a response. **(Doc. 41, pp. 4, 6 and 7.)** Plaintiff opted to lodge another grievance on September 3, 2008. **(Doc. 41, p. 6.)** Angela Windsor, Clinical Services Supervisor, testified that grievances are logged in as they are received by a grievance officer, but no proof of submission is given to an inmate.

The defendants argue that there is no evidence of the July and August grievances. At no point has plaintiff asserted that he took any other action relative to the July and August grievances. Defendants did not question plaintiff at any length about the July and August grievances or the lack of documentation. Although plaintiff apparently did not keep a copy of the grievances, this Court found his testimony credible and persuasive. Therefore, this Court would find that in July and August 2008 plaintiff did initiate two grievances regarding Evans and Cooksey and the denial of a lacto-ovo/religious diet, but they were never procedurally exhausted– meaning that they were not pursued through the full administrative process. Relative

8

to whether exhaustion was not accomplished due to the unavailability of the remedial process, there is nothing to indicate that prison officials took unfair advantage of the exhaustion requirement or any *affirmative misconduct* to prevent exhaustion. Therefore, this Court would find that plaintiff did not satisfy the exhaustion requirement via the the July and August 2008 grievances. *See Dole v. Chandler,* **438 F.3d 804, 809 (7th Cir. 2006) (citing *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); and *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004).** It is entirely possible that the grievance was not received by the grievance officer– no evidence was presented on that particular point.

Plaintiff pursued an "emergency" grievance on September 3, 2008, which on September 22, 2008, the warden ruled was not an "emergency." **(Doc. 33-1, pp. 5-6.)** That same grievance was then denied by plaintiff's counselor on September 23, 2008. **(Doc. 33-1, pp. 5-6.)** Plaintiff then submitted that grievance, a form "DOC 0046," to the Administrative Review Board, which returned it on October 7, 2008. **(Doc. 33-1, p. 4.)** The Administrative Review Board instructed plaintiff to use a "Committed Person's Grievance Report, [form]DOC 0047." **(Doc. 33-1, p. 4.)** According to plaintiff, he asked institutional officials for that form, but they were unfamiliar with the form and/or the form was not available. **(Doc. 41; *see also* Doc. 33-1, p. 4.)** In short, plaintiff asserts that the grievance process was "unavailable" due to the absence of the required form. There is no dispute that plaintiff did not pursue the September grievance through the sequential administrative process. Therefore, this Court would find that plaintiff did not procedurally exhaust administrative remedies via the September 2008 grievance, which again raises the issue of whether that process was rendered unavailable.

Clinical Services Supervisor Angela Winsor testified that the necessary grievance forms

9

are available to inmates through the prison library and other sources.  Upon questioning by the Court relative to the difference between forms "DOC 0047" and "Doc 0046," Winsor explained that form "DOC 0046" is the form an inmate must use to initiate the grievance, and form "DOC 0047" is the companion form used by grievance officers and the chief administrative officer to respond/rule on the grievance.  When asked whether an inmate could use form "DOC 0047," Winsor replied that the form was "strictly" for the grievance officer and chief administrative officer.

When plaintiff prematurely submitted his September 3, 2008, grievance to the Administrative Review Board, the Board specifically instructed plaintiff:

> Use the Committed Person's Grievance Report, DOC 0047 (formerly DC 5867), including the Grievance Officer's and Chief Administrative Officer's response to appeal.

**(Doc. 33-1, p. 4 (emphasis added).)**

The form instructing plaintiff to use "DOC 0047" includes another possible instruction directing the inmate to "Provide a copy of the Committed Person's Grievance, DOC 0046. . . ." **(Doc. 33-1.)**   According to the procedural scheme laid out in the Illinois Administrative Code and as Terri Anderson testified, although plaintiff had used a "DOC 0046" to initiate his grievance and to secure his counselor's response, he needed to pursue the grievance with a grievance counselor and the chief administrative officer (warden),  and submit the documentation of those steps to the Administrative Review Board, which is the last step in the administrative process.  Although the Administrative Review Board appears to have intended to communicate that process to plaintiff, as written, the instruction is misleading.  Plaintiff was

instructed by the highest authority in the administrative process to "use" form "DOC 0047." Angela Winsor testified that form "DOC 0047" is "strictly" for the grievance officer and warden. Consequently, this Court would find that the administrative process was rendered unavailable through the affirmative-if not intentional- action of the Administrative Review Board. *See Dole v. Chandler,* **438 F.3d 804, 809 (7th Cir. 2006) (citing *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); and *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004).**

In reaching that conclusion, this Court rejects the defendants' argument that plaintiff simply did not follow the prescribed process. Plaintiff attempted to comply with the specific instruction of the Administrative Review Board to "use" a form that is reserved for the prison administration. Furthermore, the instruction is drafted in such a way that one could reasonably read it as indicating that form "DOC 0047" was to be used along with the grievance officer's and warden's responses/rulings.

### Recommendation

For the aforestated reasons, it is the recommendation of the undersigned Magistrate Judge that the defendants' motion for summary judgment **(Doc. 32)** be denied in all respects.

DATED: May 28, 2010                    s/ Clifford J. Proud
                                        **CLIFFORD J. PROUD**
                                        **U. S. MAGISTRATE JUDGE**

### Notice of Response Deadline

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(d), the parties shall file (meaning receipt by the Clerk of Court) any objections to this report and recommendation on or before **June 14, 2010**. No extensions will be granted.