# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MICHAEL COOPER, #R06824,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.  08–cv–742–MJR–SCW** |
| | ) | |
| **JOHN EVANS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## I.  Introduction

This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to **28 U.S.C. § 636(b)(1)(B), FEDERAL RULE OF CIVIL PROCEDURE 72(b)**, and **LOCAL RULE 72.1(a)** for a Report and Recommendation on Defendants' Motion for Summary Judgment (Doc. 138, 139).  It is **RECOMMENDED** that the Court **GRANT IN PART AND DENY IN PART** Defendants' motion.

## II.  Findings of Fact

This matter stems from a course of events that took place from approximately March 2007, to December, 2008.  At all relevant times Plaintiff was an inmate at Big Muddy Correctional Center (Doc. 139-1 p. 7:13-16).

Plaintiff has been a practicing Buddhist since 2001 (Doc. 139-1 p. 9:21-24).  Plaintiff made at least two requests to be placed on an ovo-lacto diet[1] on June 22, 2007 and on March 16, 2008, and both of those requests were granted (Doc. 139-2 Ex. E).  However, Plaintiff contends that he had

---

[1] An ovo-lacto diet is one which excludes the use of all animal flesh, including meat, fish, poultry, and seafood (Doc. 139-2 Ex. A at #3).  A person on an ovo-lacto diet can, however, consume eggs, milk, and other dairy products (*Id.*).

actually made a total of four requests to be on the diet, and that his first request in March of 2007 was denied by Defendant Angela Winsor (Doc. 144 pp. 2, 4). Defendants contend that Plaintiff did not follow proper procedure in March 2007 to be placed on the diet (Doc. 149 p. 1). Plaintiff made an informal request by letter to be transferred to a different facility to accommodate his dietary needs on or around June 5, 2007 (Doc. 144-3 Ex. 1D). The request to transfer was denied, but Plaintiff was placed on the ovo-lacto diet soon after (Doc. 144-1 Ex. 6A #4-5).

Individual facilities order their food through the approved State procedure and must stay within their assigned food budget (Doc. 139-2 Ex. A at #5). Ovo-lacto meals are to be prepared in the kitchen under the supervision of kitchen Correctional Food Service Supervisors and in accordance with the Department rules and regulation (*Id.*).

Plaintiff claims that on many occasions his diet trays were "scarred" by the dietary staff at Big Muddy, meaning they were "improperly prepared" and contained "inappropriate food items" (Doc. 150 p. 2; Doc 144 p. 10). Plaintiff states that this was done "on many occasions," from the very beginning of receiving the diet trays on June 22, 2007 through the last time he was taken off of the diet on August 14, 2008 (Doc. 150 p. 2; Doc. 144 p. 10).

Plaintiff specifically contends that one manner in which his trays were scarred was that on several occasions Defendants placed Jello and gravy on his tray. The Jello served at Big Muddy Correctional Center contains a beef based gelatin which does not conform to the Plaintiff's dietary restrictions (Doc. 144-1 Ex.5B at #2). Barbara Cooksey, dietary manager at Big Muddy, admits to one instance in which Jello was placed on Plaintiff's tray and was replaced with a fruit cup by CFSSII Logan (Doc 144-1 Ex. 3B at #10). Another instance occurred in which Plaintiff received a disciplinary report for taking a brownie because his tray contained Jello (Doc. 144-5 Ex. D). Inmate Dennis Edwards states in a letter that the Plaintiff was served Jello on his diet tray on more than one occasion in the

summer of 2008 (Doc. 144-3 Ex. 1E). Plaintiff also believes there was an instance in which he was given a beef gravy on his plate (Doc. 139-1 p. 48:1-18). Upon complaining to Defendant Howell about the gravy, Howell told Plaintiff it was vegetable gravy (Doc 139-1 p. 48:14-18). Plaintiff also contends that he was denied certain food items that did meet his dietary restrictions (Doc. 139-1 p. 48:1-18). Plaintiff was on one occasion given plain potatoes rather than cheesy potatoes which was on the regular diet menu but also met the ovo-lacto diet standards according to Plaintiff (Doc. 139-1 p. 76:8-12; Doc. 139 p. 9).

Plaintiff also contends that he was inappropriately removed from the ovo-lacto diet while he was in segregation in June or July of 2008. At the time he was placed in segregation, Plaintiff was removed from the diet due to an alleged computer error (Doc. 144-1 Ex. 3A at #4; Doc 144 p. 16). Plaintiff maintains that only his diet trays were effected by the error and when he inquired about the issue to Defendant Cooksey she allegedly informed him that "[w]hen you go to seg you [lose] your privileges to participate in prison programs. You should have been taken off the diet when you went to seg" (Doc. 144 p. 16). Defendant Kline has admitted that Plaintiff was temporarily removed from the ovo-lacto meal for a week when he was placed in segregation due to a computer error (Doc. 144-1 Ex. 3A at #4; Doc. 139 p. 9). Plaintiff was added to the diet again on July 15, 2008 (Doc. 144-1 Ex. 3A at #4).

Plaintiff claims that he removed himself off the diet on December 18, 2007 and again on August 14, 2008 because his trays were being "scarred" (Doc. 144-1 Ex 3-A-J; Doc 139-1 p. 87). Plaintiff filed a grievance on September 3, 2008 claiming that multiple defendants have "refused to provide" him with a suitable diet for his religious beliefs, and that he is forced to take a regular tray (Doc. 144-3 Ex. 1F). Plaintiff also claims the reason his trays were improperly prepared by the kitchen staff at Big Muddy is because he complained and filed grievances against the staff for giving him

inappropriate food items (Doc. 144 p. 15). An affidavit from Roy Lawhorn, a dietary worker at Big Muddy, states that Defendants Barbara Cooksey and Charles Conrad told dietary workers to scar the Plaintiff's trays because he had filed grievances against them for not properly preparing his diet trays (Doc. 144-3 Ex. 1E). Plaintiff also notes that inmates of the Jewish faith are given a Kosher meal which is prepackaged and not prepared by the Big Muddy Kitchen Staff (Doc. 144 p. 14).

Plaintiff further alleges in his Complaint that disciplinary reports were improperly filed against him in retaliation for complaining about his improper diet and filing grievances. In 2008, Plaintiff received disciplinary reports on July 6, July 15, August 11, August 12, August 14, and October 7 (Doc 139-2 Ex. D). The report on July 6, 2008, was for taking a brownie which was not a part of his diet in exchange for Jello (Doc. 139-2 Ex. D). Plaintiff was found guilty (*Id.*). On July 15, 2008, Plaintiff received a disciplinary ticket, and was found guilty, for taking a regular tray when he was on the special diet (*Id*). Plaintiff then requested to be taken off of the diet August 5, 2008, and was officially taken off on August 14, 2008 (Doc. 144 p. 16; Doc. 144-1 Ex. 3A at #4). On August 11, 2008, Plaintiff was written a disciplinary ticket and found guilty for taking a regular tray instead of a diet tray (Doc. 139-2 Ex. D). Again on August 12 and August 14, 2008, Plaintiff was written a disciplinary ticket and found guilty for taking a regular tray instead of a diet tray (*Id.* at pp. 14-17). Plaintiff claims that the disciplinary reports between August 5, 2008 and August 14, 2008 for taking regular trays were done in retaliation and argues that he should have been able to take the regular trays after his request to be taken off the diet on August 5, 2008 (Doc. 144-4 p. 42:8-14).

In addition to his dietary claims, Plaintiff also alleges that he was denied his right to practice his religion by being denied the opportunity to use the prison chapel (Doc. 144 pp. 4, 9-10). Plaintiff states that his written requests to use the chapel for religious purposes were ignored by Chaplain John Kline (*Id.*). He states that he made requests to use the chapel every week and that he was

only allowed to use the chapel about ten times in two years (Doc 139-1 p. 79:10-23). No written requests to use the chapel are on record. A schedule of the services provided at the chapel does not include Buddhist services (Doc. 144-3 Ex. 1C). Inmate Richard Street states in an affidavit that as a Christian he had only made one request to attend church services to Chaplain Kline and he was given a "call pass" to attend on Mondays and Saturdays (Doc. 144-3 Ex. 1L). Defendant Kline states that several times Plaintiff requested to come to the chapel, and Kline, at various times, allowed Plaintiff access to the chapel (Doc. 144-1 Ex. 3-A-J at #5).

Plaintiff also raises a separate claim that Defendant Deana Fortag, an RN at Big Muddy Correctional Center, denied plaintiff proper medical care by not weighing the Plaintiff when he requested while he was being seen for an injury to his cheek and jaw caused by an attack by other inmates (Doc. 144 p. 19). Plaintiff saw Defendant Fortag for any injury he received as a result of an assault by another inmate and while in the Health Care Unit he allegedly inquired about a previous request to have his weight documented (*Id.*). Plaintiff received a disciplinary report on October 7, 2008, for becoming irrate with Deana Fortag, yelling and waving his fists, for either not having results back from an x-ray taken of his jaw from the incident, or for not weighing him as he requested for a second time (Doc. 139-2 Ex. D; Doc. 144-1 Ex. 3H; Doc. 144 p. 25). Plaintiff denies that he was irrate and instead merely left after becoming dissatisfied with Fortag and after asking for her name and a grievance form (Doc. 144 p. 19). Defendant was placed in segregation as a result of his disciplinary ticket (Doc. 144-2 Ex. 6D at #6).

### III. <u>Conclusions of Law</u>

**A. Summary Judgment Standard**

Under **FEDERAL RULE OF CIVIL PROCEDURE 56(c)**, summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986)**. *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005)**. The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, **398 U.S. 144, 160 (1970)**. *See also Lawrence v. Kenosha County*, **391 F.3d 837, 841 (7th Cir. 2004)**. A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986);** *Ballance v. City of Springfield, Illinois Police Department*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger,* **388 F.3d 1015, 1027 (7th Cir. 2004)**. Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004)**. *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004).**

The inquiry performed is the threshold inquiry of determining whether there is the need for a trial, whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

> [T]his standard mirrors the standard for a directed verdict under **FEDERAL RULE OF CIVIL PROCEDURE 50(a)**, which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986)**. *See also Celotex Corporation v. Catrett*, **477 U.S. 317, 322-23 (1986);** *Packman v. Chicago Tribune Co.*, **267 F.3d 628, 637 (7th Cir. 2001);** *Sybron Transition Corporation v. Security Insurance Company of Hartford*, **107 F.3d 1250, 1255 (7th Cir. 1997).**

A showing of a mere factual disagreement between the parties is insufficient, the factual issue must be "material," meaning that the issue must be one affecting the outcome of the suit. *See*

*Outlaw v. Newkirk*, **259 F.3d 833, 837 (7th Cir. 2001)**. A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, **477 U.S. at 323**. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*.

The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, **486 F.3d 1017, 1022 (7th Cir. 2007) (quoting** *Hammel v. Eau Galle Cheese Factory*, **407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted))**. The moving party bears the initial burden of producing evidence that identifies "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes to demonstrate the absence of a genuine issue of material fact." *Outlaw*, **259 F.3d at 837 (quoting** *Logan v. Commercial Union Ins. Co.*, **96 F.3d 971, 978 (7th Cir. 1996))**. After the moving party has satisfied its burden to establish that no genuine issue of material fact exists, the burden shifts to the non-moving party to "set forth specific facts showing there is a genuine issue for trial." **Fed.R.Civ.P. 56(e)(2)**. The non-moving party "may not rely merely on allegations or denials in its own pleading." *Id*. The opposing party must, instead, "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file.' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex*, **477 U.S. at 324.**

**B.      First Amendment Claims**

"An inmate retains the right to exercise his religious beliefs in prison." *Kaufman v. McCaughtry*, **419 F.3d 678, 681(7th Cir. 2005) (**citing *Tarpley v. Allen County*, **312 F.3d 895, 898 (7th Cir. 2002))**. However, a prisoner's rights may be restricted by the fact of confinement and the

needs of the penal institution. *Jones v. North Carolina Prisoners' Labor Union*, **433 U.S. 119, 125, 97 S. Ct. 2532, 2537-2538 (1977).** "A prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion." *Canedy v. Boardman*, **91 F.3d 30, 33 (7th Cir. 1996).** "[A]n inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests." *Kaufman v. McCaughtry,* **419 F.3d 678, 683 (7th Cir. 2005)**.

## 1. Religious Diet

Observance of religiously mandated dietary restrictions is a form of religious practice protected by the First Amendment. *Hunafa v. Murphy*, **907 F.2d 46, 47 (7th Cir. 1990).** A claim that is recognized in a number of cases is being forced to choose between adequate nutrition and observance of faith. *Id. See also Koger v. Bryan*, **523 F.3d 789, 799 (7th Cir. 2008).** To have a claim, Plaintiff must show his right to practice his religion was burdened in a significant way. *Kaufman*, **419 F.3d 678, 683 (7th Cir. 2005)**. More specifically, to prevail on a First Amendment Free Exercise Clause claim, the plaintiff must show a "substantial burden" on a "central religious belief or practice." *Id.* **(**citing *Hernandez v. C.I.R.***, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)).** The definition that the Seventh Circuit has used for "substantial burden" in similar cases is: "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise… effectively impracticable." *Civil Liberties Union for Urban Believers*, **342 F.3d 752, 761 (7th Cir. 2003):** *Nelson v. Miller*, **570 F.3d 868, 878 (7th Cir. 2009).** Further, government conduct is substantially burdensome "when it puts substantial pressure on an adherent to modify his behavior and violate his beliefs." *Nelson*, **570 F.3d 868, at 878 (7th Cir. 2009)** (internal citations omitted)**;** *Koger*, **523 F.3d at 799** (quoting *Thomas v. Review Bd.*, **450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.E.2d 624 (1981)).**

A plaintiff must also show that the individuals whom he has named as defendants are personally responsible for the constitutional violations which he alleges. This means that plaintiff must show that a defendant personally caused or participated in the violation of his constitutional rights in order to prevail against that defendant. *Vance v. Peters,* **97 F.3d 987, 991 (7th Cir. 1996);** *Johnson v. Snyder*, **444 F.3d 579, 583-584 (7th Cir. 2006).**

### a. Timing of Request and Placement on Religious Diet

Plaintiff alleges several violations of his First Amendment right to observe his religiously mandatory diet restrictions by officials at Big Muddy Correctional Facility. The first claim Plaintiff alleges in his Complaint and Response to Defendant's Motion to Summary Judgment is that he was denied a request to be placed on the ovo-lacto diet in March of 2007, by Defendant Angela Winsor (Doc. 150 p. 1-2). In Defendants' Motion for Summary Judgment, they claim that Plaintiff only made two requests to be on the diet on 6/22/07 and 3/25/08, and both requests were granted (Doc. 139 p. 2). However, Plaintiff's Exhibit 1D, a letter from the Plaintiff, states that Plaintiff requested a diet in March 2007 by writing Angela Winsor (Doc. 144-3 p. 7). In his deposition Plaintiff claims that this letter was edited by Chaplin Jon Kline (Doc 139-1 p. 14:4-7). Defendant Winsor also admitted in her Response to Plaintiff's Request for Admissions that the Plaintiff requested to be transferred to a different facility that could conform to his religious beliefs in May or June of 2007. Winsor also admits that soon after the request for transfer Plaintiff was allowed on an ovo-lacto diet, but denied the request for transfer. In Defendant Winsor's response to Plaintiff's request for admissions, Winsor states that Plaintiff's request in May or June of 2007 was *another* request ( Doc. 144-1 Ex. 6A).

In Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment, Defendants claim that even in light of the letter (Ex. 144-3 Exhibit 1D), Plaintiff has no evidence that he followed proper procedure in requesting the ovo-lacto diet in March of 2007 (Doc. 149). Defendant

is correct in that an actual request around the date of March 2007 has not been submitted into evidence; however, there is evidence on record that suggests that Plaintiff has made such a request. Therefore, there are issues of fact which preclude summary judgment.

As to all other Defendants, including Defendants John Kline, Charles Conrad, Barbara Cooksey, John D. Evans, Gerald D. Hopson, Jerry Howell, Michael Oreskovich, and Michael Proctor, Defendants have failed to clarify which Defendants were involved in the decision making process regarding placement on religious diets. However, a review of Plaintiff's Amended Complaint suggests that Defendant Kline, Barbara Cooksey, Angela Windsor, and Michael Proctor were allegedly involved in the decision making process of putting Defendant on the diet. As to Defendant Kline, Defendants admitted in their motion for summary judgment (Doc. 139) that while Kline was not involved in the preparation of Plaintiff's meal, he had some role in placing Plaintiff on the special diet (Doc. 139 p. 17). As to Defendants Barbara Cooksey, Angela Windsor, and Michael Proctor, Plaintiff's Amended Complaint alleged that each were involved in providing Plaintiff with a diet that conformed with his religious specifications and thus can not be dismissed under this claim (*See* Doc. 29 ¶¶ 3, 5, 11).

However, as to Defendants John Evans, Charles Conrad, Gerald D. Hopson, Jerry Howell, and Michael Oreskovich, Plaintiff has offered no evidence that any of these Defendants were specifically involved in the decision making process for placing Plaintiff on the ovo-lacto diet. Specifically as to John Evans, Plaintiff's Amended Complaint alleges that he operated, maintained, and controlled the Big Muddy Correction Center. In order to be liable under § 1983, however, a "… plaintiff must show that a defendant personally caused or participated in the violation of his constitutional rights in order to prevail against that defendant. *Vance v. Peters,* **97 F.3d 987, 991 (7th Cir. 1996);** *Johnson v. Snyder*, **444 F.3d 579, 583-584 (7th Cir. 2006).** There is no respondeat

superior liability in Section 1983 cases. *Sanville v. McCaughtry*, **266 F.3d 724, 749 (7th Cir. 2001);** *see also Burks v. Raemisch*, **555 F.3d 592, 593-94 (7th Cir. 2009) ("Section 1983 does not establish a system of vicarious responsibility.")**. Instead, liability depends on the defendants' own knowledge and action, "not on the knowledge or actions of persons they supervise." *Burks*, **555 F.3d at 594.** "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Chavez v. Illinois State Police*, **251 F.3d 612, 651 (7th Cir. 2001).** However, a supervisor can be personally involved in the violation when he "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge of consent." *Rascon v. Hardiman*, **803 F.2d 269, 274 (7th Cir. 1986);** *Sanville*, **251 F.3d at 740**. A supervisor is liable only for his own misconduct, not for the misconduct of others under his authority. *Duckworth v. Franzen*, **780 F.2d 645, 650 (7th Cir. 1985)**. Thus, Defendant Evans can not be held liable as Defendant Cooksey's or any of the other Defendants' supervisor. Further, Plaintiff readily admits that Evans had no involvement in the decisions and preparation of Plaintiff's meals (*See* Doc. 139-1 pp. 45:18-22, 46:22-47:8). Accordingly, as there is no evidence in the record that Defendant Evans was involved in planning Plaintiff's meals and can not be held liable under a doctrine of respondeat superior, the undersigned **RECOMMENDS** that summary judgment be **GRANTED** in favor of Defendant Evans.

Further, as to Defendants Conrad, Hopson, Howell, and Oreskovich, Plaintiff has failed to put forth any evidence showing that they had personal involvement in the decision to place Plaintiff on a religious diet. Additionally, in Plaintiff's Amended Complaint, he states that Defendants Conrad, Hopson, Howell, and Oreskovich worked in the inmate dining facility and interfered with Plaintiff's religious diet restrictions *by improperly preparing and scarring* Plaintiff's religious meals (*See* Doc. 29 ¶¶ 7, 10, 12, 13). Thus, it appears that Plaintiff is not even claiming that these defendants were involved in

the decision making process regarding his diet. Therefore, the Court **RECOMMENDS** that summary judgment be **GRANTED** as to Plaintiff's claims regarding his original request to be placed on the ovo-lacto diet in favor of Defendants Conrad, Hopson, Howell, and Oreskovich.

### b.    Denial of Religious Diet While in Segregation

As to the second First Amendment claim, Plaintiff alleges that while he was on the diet, he was placed in segregation for a week and the Defendants did not provide him with an ovo-lacto meal during this time (Doc. 144). Observance of religiously mandated dietary restrictions is a form of religious practice protected by the First Amendment. *Hunafa v. Murphy*, **907 F.2d 46, 47 (7th Cir. 1990).** A claim that is recognized in a number of cases is being forced to choose between adequate nutrition and observance of faith. *Id. See also Koger v. Bryan*, **523 F.3d 789, 799 (7th Cir. 2008).** Plaintiff's argument is that during this period of segregation he was forced to choose between adequate nutrition, by eating the meals, or observing his faith, by refusing the meals and starving himself. *See Hunafa*, **907 F.2d at 47 (inmates rights violated when forced to choose between adequate nutrition and observation of faith).** Plaintiff's claim that he was involuntarily removed from the diet for seven days while in segregation is supported by Defendant Kline's own admission that Plaintiff was removed from the special diet when he was temporarily placed in segregation. He stated that the removal was due to computer error (Doc 144-1 Ex. 3A at #4).

"[A]n inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests." *Kaufman v. McCaughtry*, **419 F.3d 678, 683 (7th Cir. 2005)**. Though a prison can restrict an inmate's practices if it has penological interests in doing so, the Defendants do not claim that serving the inmate special diet trays during segregation would be against any penological interests of the institution. The

only defense they offer in the Motion for Summary Judgment is that it was "computer error" and that seven days of not receiving a special diet was not a substantial burden, and did not render the Plaintiff's practice of his religion ineffective (Doc. 139 p. 4). Therefore, there is at least an issue of fact as to whether the removal of Plaintiff from his religious diet was a substantial burden or that it interfered with his religious practice. On the record now before the court, Defendants have not demonstrated that they are entitled to summary judgment on the First Amendment claim while Plaintiff was in segregation.

As with Plaintiff's previous claim regarding his original placement on the ovo-lacto diet, the Court finds that issues of fact remain as to what role, if any, Defendants Kline, Windsor, Cooksey, and Proctor played in the decision making process regarding Plaintiff's placement, or in this case, removal from the ovo-lacto diet. Thus, the claim against Defendants Kline, Windsor, Cooksey, and Proctor cannot be dismissed at this time. However, as previously discussed, Plaintiff has failed to demonstrate any personal involvement in the decision making process by Defendants Evans, Conrad, Hopson, Howell, and Oreskovich. Moreover, his claims on this issue as stated in his Amended Complaint do not appear to be directed at Defendants Conrad, Hopson, Howell, or Oreskovich. Thus, the Court **RECOMMENDS** that summary judgment be **GRANTED** in favor of Evans, Conrad, Hopson, Howell, and Oreskovich on Plaintiff's claim regarding his removal from the ovo-lacto diet while in segregation.

### c. "Scarring" of Trays

Plaintiff also alleges that Defendants would "scar" his plate in violation of his First Amendment rights. In Plaintiff's deposition and his Response to the Defendant's Motion for Summary Judgment, he claims that his meals were being "improperly prepared" (Doc. 144 p. 10; Doc. 150 p. 2). Plaintiff claims his trays were "scarred," which by *his* definition means that his trays were being made

with less than the adequate amounts of food, and with inappropriate food items (Doc 139-1 pp. 17:23-18:3). Plaintiff alleges that Jello and beef based gravy were placed on his try numerous times (*Id.* at p. 17:5-14). Both items contain animal products and eating such items would violate the tenants of the ovo-lacto diet. It is undisputed that Jello was placed on the Plaintiff's tray at least once. Plaintiff points to other evidence that indicates there may have been more than one occasion that the Plaintiff received Jello. There is a disciplinary report that was issued to the Plaintiff for taking a brownie because he had Jello (Doc. 139-2 Ex. D). Also in Defendant Cooksey's response to Plaintiff's interrogatories, she admits to an instance in which Jello was replaced with a fruit cup on Plaintiff's tray (Doc. 144-1 Ex. 3B at #10) Whether the evidence here is referring to the same incident, or several, is unclear. Plaintiff alleges that this occurred multiple times but there is not enough evidence on the record to establish this. There is also an allegation that the Defendants put a beef based gravy on the Plaintiff's plate once, but there is no evidence that this gravy was in fact beef based. Plaintiff was informed that the gravy was vegetable based (Doc. 139-1 p. 48:14-18). There is also an allegation that Plaintiff's cheesy potatoes did not contain cheese, even though cheese is allowed under the ovo-lacto diet. However, there is not enough evidence to show that the Plaintiff's tray was tampered with enough to be a substantial burden on his religious practices. There is no evidence in the record to demonstrate that Plaintiff's trays were tampered in such a way that Plaintiff was forced to choose between eating an adequate meal and observing his religious tenants.

Unlike in *Hunafa v. Murphy*, **907 F.2d 46, 47 (7th Cir. 1990)**, in which pork based product would slosh around on the tray and contaminate the other food leaving the inmate to choose between adequate nutrition and practice of his religious beliefs, in this case, Plaintiff could still consume most of the items on the tray. There is not enough evidence on record to indicate how many times Jello was in fact placed on the Plaintiff's tray. Even if Jello was placed on his tray numerous times, there is

no evidence that Plaintiff could not eat the remainder of his meal or that the Jello intermingled with the other items in such a way that would contaminate other portions of his meal. There is no evidence that the Jello was creating a substantial burden on his practice of religion. Desert is not enough. The evidence on record does not suggest that his religious practices were rendered ineffective by these minor instances. In addition, there is no evidence given that Plaintiff was not given enough to eat or that he was receiving inadequate nutrition. Accordingly, the Court **RECOMMENDS** that summary judgment be **GRANTED** as to this claim.

### 2. Use of Chapel

Plaintiff also alleges in this Amended Complaint that he was denied adequate access to the prison chapel. "[R]easonable opportunities must be afforded to all prisoners to exercise the religious freedoms guaranteed by the First and Fourteenth amendments without fear of penalty." *Cruz v. Beto*, 405 U.S. 319, 322 (1972). "Prisons cannot discriminate against a particular religion." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). However, constitutional rights to practice religion may be restricted by the fact of confinement and the needs of the penal institution. **See** *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125, 97 S.Ct. 2532, 2537-2538 (1977). "Where the precepts of a religious sect call for its adherents to engage in a religious practice which does not present a threat to the security, discipline and good order of the institution, the State has the burden of justifying policies or practices which prevent such inmate from engaging in such religious practices." *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). The Constitution does not require absolute parity among services provided for each different religious sect. *Young v. Lane*, 922 F.2d 370, 377 (7th Cir. 1991); *Al-Alamin v. Gramley*, 926 F.2d 680, 682 (7th Cir. 1991).

In Plaintiff's Amended Complaint he raises as an issue his ability to use the chapel at Big

Muddy (Doc. 29 p. 4). Count #4 states: "At all times… Defendant Jon Kline operated, maintained, and controlled the chapel of Big Muddy Corr. Center… denied Plaintiff equal opportunity to practice, refuse to inform administration of action(s) of named Defendant." Plaintiff also makes arguments in his Response to Defendant's Motion for Summary Judgment regarding the use of the chapel. He states that he was denied a reasonable opportunity to practice as the other faiths were, and that his "ability to practice his religious beliefs in the chapel were burdened" (Doc. 144 p. 11).

Plaintiff states in his deposition that he put in written requests for chapel time every week to Chaplain Kline, and that he was only allowed to practice in the chapel about ten times in two years (Doc. 139-1 p. 13). No written requests to use the chapel are on record. In support of his claim, Plaintiff provides a schedule of services provided at the chapel throughout the week, none of which are Buddhist services (Doc. 144-3 Ex. 1C). Plaintiff has also provided an affidavit from inmate Richard Street. Mr. Street claims that as a Christian he attended services at the chapel on Mondays and Saturdays, and he only had to make one written request to Chaplin Kline to be accommodated (Doc. 144-3 Ex. 1L). Further, in Defendant Kline's Response to Plaintiff's Interrogatories (#5), Kline states: "Plaintiff requested times to come to the chapel and meditate. He would be called over at various times to do so" (Doc. 144-1 p. 2). Defendant, debating whether a First Amendment claim regarding the use of the chapel was even alleged, fails to raise any argument in support of summary judgment. However, it is clear that the claim was raised and factual issues still exist. Therefore, summary judgment on this issue is not appropriate at this time and the undersigned **RECOMMENDS** that the motion be **DENIED** as to Defendant Kline.

## C.    Equal Protection Claims

To make a 42 U.S.C. § 1983 equal protection claim, the Plaintiff "must show intentional discrimination against him because of his membership in a particular class, not merely that he was

treated unfairly as an individual." *Huebschen v. Department of Health and Social Services*, **716 F.2d 1167, 1171 (7th Cir. 1983).** Plaintiff "must demonstrate intentional or purposeful discrimination by … [state] authorities to favor one class over another." *Bloomenthal v. Lavelle*, **614 F.2d 1139, 1141 (7th Cir. 1980)**. "To state a prima facie claim under the Equal Protection Clause… a plaintiff must demonstrate that (1) he is otherwise similarly situated to members of the unprotected class; (2) he was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent." *Greer v. Amesqua*, **212 F.3d 358, 370 (7th Cir. 2000).** "[T]he free exercise clause guarantees a liberty interest, a substantive right; it does not guarantee that all religious sects will be treated alike in all respects." *Young v. Lane*, **922 F.2d 370, 377 (7th Cir. 1991);** *See also Cruz v. Beto*, **405 U.S. 319, 322, 92 S.Ct. 1079, 1082 (1972).** A prisoner's rights may be restricted by the fact of confinement and the needs of the penal institution. *Jones v. North Carolina Prisoners' Labor Union*, **433 U.S. 119, 125, 97 S. Ct. 2532, 2537-2538 (1977).**

In his Amended Complaint the Plaintiff states that the Defendants denied him equal protection by not providing him with a meal that conforms to his Buddhist religion (Doc. 29 p. 6). In the Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff states that he was denied an ovo-lacto tray while other religions received diet trays conforming to their religious requirements, that his request to be moved to another facility which could accommodate his religious beliefs was denied, and that the Jewish prisoners received Kosher meals that were pre-packaged and conformed to their religious needs while his ovo-lacto meals were made by the kitchen staff at Big Muddy Correctional Facility and allegedly did not conform to his diet restrictions (Doc. 144 pp. 12-14).

The Defendants state in their Motion for Summary Judgment that the Plaintiff did not claim the reason he was denied the diet was because he is Buddhist or a member of any other particular class (Doc. 139 p. 10). The Court agrees with the Defendants. While the Plaintiff claims that he had

requested the ovo-lacto diet because he was Buddhist, he does not directly allege that the reason he was denied was because he was a Buddhist. In regard to the diet, Plaintiff makes no allegations and brings forward no evidence that other Buddhists were similarly discriminated against. Even taking the Plaintiff's allegations as true, the evidence on record only shows that he was treated unfairly as an individual, not because of his membership in a particular class. There is no evidence to support a claim that the Defendants were purposefully or intentionally denying the Plaintiff a meal because Plaintiff was Buddhist.

The fact that the Jewish prisoners were given prepackaged meals, and the Plaintiff's meals were made by Big Muddy kitchen staff is not enough to state a claim for Equal Protection. A prisoner's rights may be restricted by the fact of confinement and the needs of the penal institution. *Jones v. North Carolina Prisoners' Labor Union*, **433 U.S. 119, 125, 97 S. Ct. 2532, 2537-2538 (1977).** The fact that the Jewish prisoners' Kosher meals were prepackaged and the ovo-lacto meal were not, does not prove that the Plaintiff or Buddhists were being purposefully discriminated against. The affidavit of Susan Griswold, the Food Service Administrator for the Illinois Department of Corrections, states that the ovo-lacto menus for all facilities are designed to ensure that the recipients receive nutritionally adequate ovo-lacto diets. Individual facilities order their food through the approved State procedure and must stay within their assigned food budget (Doc. 139-2 Ex. A). The prepackaging of the ovo-lacto diet is not a part of that procedure, and the fact that the meals are not prepackaged does not show that Defendants were purposefully discriminating against Plaintiff or other Buddhists. The Court **RECOMMENDS** that summary Judgment, therefore, be **GRANTED** because Plaintiff has failed to present any evidence to support an Equal Protection Claim.

**D.     Retaliation Claims**

A prisoner has a right under the First Amendment to challenge the conditions of his confinement by filing grievances and prison officials are not allowed to retaliate against an inmate for exercising his First Amendment Rights. *See DeWalt v. Carter*, **224 F.3d 607, 618 (7th Cir. 2000)(citing** *Babcock v. White*, **102 F.3d 267, 274-75 (7th Cir. 1996)).** In order to establish a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that he was "engaged in activity protected by the First Amendment" and that he "suffered a deprivation that would likely deter First Amendment activity in the future." *Bridges v. Gilbert*, **557 F.3d 541, 546 (7th Cir. 2009).** A plaintiff must further prove that the protected activity caused the defendant to retaliate. **See** *Gunville v. Walker*, **583 F.3d 979, 984 n. 1 (7th Cir. 2009) ("Until the Supreme Court's recent decision in** *Gross v. FBL Financial Serv[ices], Inc*., **plaintiffs could prevail in a First Amendment § 1983 action if they could demonstrate that their speech was a motivating factor in the defendant's decision. After** *Gross*, **plaintiffs in federal suits must demonstrate but-for causation unless a statute (such as the Civil Rights Act of 1991) provides otherwise." (citing** *Gross v. FBL Fin. Servs., Inc*., **- - U.S. - -, 129 S. Ct. 2343, 174 L.E.2d 119 (2009);** *Fairley v. Andrews*, **578 F.3d 518, 525-26 (7th Cir. 2009))).** At the summary judgment stage of proceedings, "mere speculation" on the plaintiff's part is insufficient; instead, a plaintiff must come forward with some evidence of causation. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, **544 F.3d 752, 757 (7th Cir. 2008)**.

**1.     "Scarring" in Retaliation**

Plaintiff alleges two retaliation claims in his Amended Complaint. Plaintiff first alleges that the Defendants retaliated against Plaintiff for filing grievances by "scarring" his diet trays, and by putting

Jello on his trays (Doc. 29 pp. 5-7). As stated above in regards to Plaintiff's First Amendment claims regarding Jello, there is not enough evidence to know exactly how many times that Plaintiff is claiming the Defendants tampered with his tray. There is at least one instance on record where the Plaintiff was given Jello (Doc. 144-1 Ex. 3B at #10). He also claims that he was given beef-based gravy once, but there is no evidence that the gravy was in fact beef-based. There is also a claim that he was given cheesy potatoes with no cheese (Doc 139-1 p. 17:5-14).

To support his claim Plaintiff submits a letter from Dennis Edwards, an inmate at Big Muddy Correctional Center, which states that the Plaintiff did in fact receive Jello on more than one occasion (Doc. 144-3). However, this evidence is insufficient because a section of the letter that states that the signer is sworn under penalty of perjury has been crossed out. *See* **FED.R.CIV.P. 56(c)(1)(A).**

Plaintiff also provides an affidavit from Roy Lawhorn, a dietary worker at Big Muddy, which states that he has witnessed "on several occasions that [Cooper's] trays were not prepared as by regulations." He also states that "when [Cooper] brought it to their attention, his ovo-lacto trays were 'scarred'." Mr. Lawhorn claims that he was told to "scar" diet trays by Defendant Cooksey and Charles Conrad, "because inmates had written grievances that trays weren't being prepared properly" (Doc. 144-3 Ex 1B). Even with these statements by Mr. Lawhorn, there is still not enough evidence to show that these acts of retaliation deprived the Plaintiff enough to rise to a level of retaliation. In regard to the instances of retaliation the Plaintiff uses the following terms to describe his tray: "scarred," "inadequate," "improperly prepared," and that it contained "inadequate food items" (Doc. 144 pp. 10, 13-17). First the Court has already determined that the "scarring" was not enough to rise to the level of a First Amendment violation. Further, the evidence does not show that these acts of "scarring" rise to a level of deprivation that would deter the Plaintiff from First Amendment activity in the future. Giving the Plaintiff Jello on occasion or potatoes lacking cheese is not enough of a deprivation that

would deter the Plaintiff from filing grievances in this case. The instances that are on record, as stated above, are very few and far between and not enough to rise to a level of deprivation adequate for a claim of retaliation. Defendants are, therefore, entitled to summary judgment on this claim, and this Court accordingly **RECOMMENDS** that summary judgment be **GRANTED**.

    2.    **Retaliation Through False Disciplinary Reports**

The second retaliation claim that the Plaintiff raises is that he was given false disciplinary reports for taking a regular tray after he had requested to be removed from the diet. In Plaintiff's Response to Defendants Motion for Summary Judgment, Plaintiff states that he requested to be taken off the diet twice; on 12/18/07, and on 8/5/08 (Doc. 144 pp. 8-9). In the Plaintiff's deposition he states that the first time he requested to be taken off of the diet on 12/18/07 there was a 'gap' period of seven to ten days after he filed the request to when he was actually taken off the diet. He further claims that during this 'gap' period that he was allowed to take a regular tray without repercussion (Doc 139-1 p. 42:8-14). The claim, here, however, is in regard to disciplinary reports that occurred after the Plaintiff's second request to be taken off the diet on 8/5/08. Defendant Kline states in his interrogatories that the Plaintiff was removed from the diet on 8/14/08 (Doc. 144-1 Ex. 3A at #4). It seems clear from the evidence that the Plaintiff requested off on 8/5/08, and was officially removed nine days later, on 8/14/08. This would coincide with the Plaintiff's own statement that it took seven to ten days for him to be removed after the first request.

There are three disciplinary reports on record in question on the dates of 8/11/08, 8/12/08, and 8/14/08 (Doc. 139-2 Ex. D). These are the only reports that are in question because they are the only ones the Plaintiff received for taking a regular tray which may have been given to the Plaintiff after he requested to be taken off of the diet. As to the complaints on 8/11/08 and 8/12/08, Plaintiff argues that since he was allowed to take regular trays during the "gap" period, or the

period between request and confirmation, the first time he was taken off the diet in December of 2007, then he should not have been ticketed for taking a regular tray during the "gap" period the second time he was taken off the diet and thus the tickets were in retaliation for filing grievances. However, there is no evidence to indicate that the Plaintiff was in fact allowed to take regular trays during the "gap" period after filing a request to be taken off the diet. Since the procedure is that it takes seven to ten days to process and approve the request, which Plaintiff has stated himself to be the procedure at Big Muddy, then the disciplinary reports on 8/11/08 and 8/12/08 were within the Defendant's authority. Further, there is no evidence that the disciplinary reports were solely in response to the Plaintiff filing grievances. The disciplinary reports were given for Plaintiff taking a regular tray, which the Plaintiff does not deny taking, during a period of time before Plaintiff was officially removed from the diet. From the evidence before the Court, Plaintiff has failed to produce any evidence to indicate that Defendants lacked a legitimate reason for writing the disciplinary tickets or that the real motive was retaliation. Nor has the Plaintiff offered any evidence beyond his own mere speculation that the tickets were issued in retaliation for filing grievances or that Defendants had knowledge that Plaintiff had sought removal from the diet.

As to the disciplinary report given on 8/14/08, there is also not enough evidence to show that it was retaliatory. The report was written at 10:35 am on the same day that Plaintiff was officially removed from the diet (Doc. 144-5 Ex. D). There is no evidence on record to establish that the kitchen staff had knowledge that the Plaintiff was removed from the diet at this point. There is not enough evidence on the record to establish a claim of retaliation in regards to excessive, or unjustified disciplinary reports. Therefore, the Court **RECOMMENDS** that summary judgment be **GRANTED** as to all Defendants on this issue.

### E.    Deliberate Indifference Claims

The Supreme Court has declared that a prison official's "deliberate indifference to

serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, **429 U.S. 97, 104 (1976) (quoting** *Gregg v. Georgia*, **428 U.S. 153, 173 (1976))**.  In order to prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, **414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).**

The following circumstances could constitute a serious medical need: "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, **546 F.3d 516, 522-23 (7th Cir. 2008) (quoting** *Gutierrez v. Peters*, **111 F.3d 1364, 1373 (7th Cir. 1997))**. *See also Foelker v. Outagamie County*, **394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.")**.

Second, a prisoner must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference.  "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, **429 U.S. at 104 (quoting** *Gregg v. Georgia*, **428 U.S. 153, 173 (1976))**.  "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, **780 F.2d 645, 652-53 (7th Cir. 1985)**.  Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough.  *Id*. **at 653;** *Shockley v. Jones*, **823 F.2d 1068, 1072 (7th Cir. 1987)**.  Put another way, the Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists"and that the officials actually drew that inference. *Greeno*, **414 F.3d at 653.** "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence,... and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, **511 U.S. 825, 842 (1994) (citations omitted)**. A plaintiff does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008) (quoting** *Sherrod v. Lingle*, **223 F.3d 605, 611 (7th Cir. 2000)).** "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010) (quoting** *Farmer*, **511 U.S. at 843).**

Plaintiff's Amended Complaint alleges that Nurse Fortag was deliberately indifferent to Plaintiff's serious medical needs by failing to adequately document his weight loss. In his Response to Defendants' motion for summary judgment, Plaintiff also for the first time brings up the issue of injuries he received to his cheek and jaw area as a result of an assault by another inmate at Big Muddy. Plaintiff alleges in his response that Defendant Fortag was deliberately indifferent to those injuries. As to the injuries sustained to his cheek and jaw, Plaintiff does not list these allegations in his Complaint and has failed to raise those allegations at any point prior to his Response. Plaintiff can not, therefore, raise those claims now.

As to his allegations of weight loss and Fortag's failure to document the changes in his weight, Defendants are also entitled to summary judgment. Plaintiff states in his Response that he asked to be weighed specifically on two occasions when he was before Defendant Fortag, once while he was being seen by Defendant after an assault by another inmate and once on a followup visit for an

injury to his cheek. While Plaintiff argues that Fortag failed to document his weight loss after he requested that she do so, Plaintiff is not entitled to demand specific care. *Forbes v. Edgar*, **112 F.3d 262, 267 (7th Cir. 1997)**. Here, Plaintiff merely seems to express a dissatisfaction with Fortag for failing to weigh him while he was seeing her for an unrelated issue, namely injuries to his face. While he might be dissatisfied with Defendant Fortag for refusing to weigh him, his mere dissatisfaction with her decision is not enough. *See Johnson v. Doughty*, **433 F.3d 1001, 1013 (7th Cir. 2006) (citing** *Snipes v. DeTella,* **95 F.3d 586, 592 (7th Cir. 1996));** *Edwards v. Snyder*, **478 F.3d 827, 831 (7th Cir. 2007) (citing Estella v. Gamble, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976)).** Plaintiff must demonstrate that he had a serious medical need that Defendant Fortag was deliberately indifferent to. While extreme weight loss could be a serious medical need, Plaintiff has failed to point to any evidence that he was suffering from extreme weight loss or that Defendant Fortag was deliberately indifferent to that weight loss. Accordingly, the Court **RECOMMENDS** that summary judgment be **GRANTED** on the deliberate indifference claim against Defendant Fortag.

### IV.   Conclusions and Recommendations

Accordingly, the Undersigned **RECOMMENDS** that Defendants' motion for summary judgment (Docs. 138 & 139) be **GRANTED IN PART AND DENIED IN PART**.

Should this Report and Recommendation be adopted in its entirety the following claims will remain for trial:

1.   Plaintiff's claim against Defendants Barbara Cooksey, Jon Kline, Michael Proctor, and Angela Windsor for violation of his First Amendment Rights to practice his religion by denying his request to be on an ovo-lacto diet from March 2007 until June 2007.

2.   Plaintiff's claim against Defendants Barbara Cooksey, Jon Kline, Michael Proctor, and Angela Windsor for violation of his First Amendment Rights to practice his religion by removing him

from the ovo-lacto diet while he was in segregation.

3.      Plaintiff's claim against Defendant Jon Kline for violation of his First Amendment Rights to practice his religion by denying him access to the prison chapel.

Pursuant to **28 U.S.C. § 636(b)(1)** and **LOCAL RULE 73.1**, the parties shall have fourteen (14) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals.

**IT IS SO ORDERED.**
DATED: August 3, 2011

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge